No. 2015-1946

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00636

## NON-CONFIDENTIAL BRIEF FOR APPELLEE BROADCOM CORPORATION

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

January 25, 2016

# CERTIFICATE OF INTEREST

Counsel for Appellee Broadcom Corporation certifies the following:

1.     The full name of every party or *amicus* represented by us is:

Broadcom Corporation

2.     The names of the real party in interest represented by us is:

Broadcom Corporation

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  Dominic E. Massa, Katie M. Saxton, Kevin A. Goldman, Zachary P. Piccolomini, Michael A. Diener

Dated:  January 25, 2016

/s/ Dominic E. Massa
Dominic E. Massa
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..................................................................................i

TABLE OF AUTHORITIES ......................................................................................v

STATEMENT OF RELATED CASES ....................................................................1

INTRODUCTION ......................................................................................................2

STATEMENT OF ISSUES ......................................................................................4

STATEMENT OF THE CASE..................................................................................4

    A.    The Parties ................................................................................................4

    B.    The Prior Art ............................................................................................5

        1.    ARQ Protocols ..............................................................................5

        2.    Hettich ..........................................................................................7

    C.    The '625 Patent ........................................................................................9

        1.    The '625 claim and specification..................................................9

        2.    The '625 patent prosecution history .........................................11

    D.    The Eastern District of Texas Litigation..............................................12

    E.    The Proceedings Before The Board And The Prior
        Petition For Mandamus ........................................................................13

SUMMARY OF THE ARGUMENT ......................................................................20

ARGUMENT ..........................................................................................................21

I.    STANDARD OF REVIEW ..............................................................................21

II.    THE BOARD CORRECTLY DETERMINED THAT CLAIM 1 OF THE
    '625 PATENT IS UNPATENTABLE. ...............................................................22

A.    The Board's Factual Finding That Hettich Discloses The "Commanding A Receiver [To] Release" Step Is Supported By Substantial Evidence. ...................................23

    1.    Hettich discloses the "commanding a receiver [to] release" step because the Delay PDU commands a receiver to release expectations of receiving any data packet with a sequence number less than or equal to the Delay PDU. ...........................................23

    2.    Wi-Fi One's contrary arguments are without merit..................27

B.    The Board's Factual Finding That Hettich Discloses The "Discarding" Step Is Supported By Substantial Evidence..................31

    1.    Hettich discloses the "discarding" step because the transmitter discards all unacknowledged packets with sequence numbers less than or equal to the Delay PDU. ...............................................................31

    2.    Wi-Fi One's contrary arguments are without merit..................32

III.    THE BOARD'S DETERMINATION TO INITIATE AN *INTER PARTES* REVIEW IS BOTH CORRECT AND UNREVIEWABLE. ........................................35

    A.    35 U.S.C. § 314(d) Deprives This Court Of Jurisdiction To Review The Board's Determination To Initiate An *Inter Partes* Review...........................................................................35

    B.    Although Not Reviewable, The Board Correctly Determined That Broadcom's Petition Was Not Time-Barred. ...........................................................................42

    1.    The Board properly applied Section 315(b) to determine that Broadcom's petition was timely filed. .........................................................................42

    2.    The Texas Defendants are not real parties in interest or in privity with Broadcom........................................43

C.     Wi-Fi One Has Identified No Basis For This Court To
        Invoke The Extraordinary Remedy Of Mandamus. ............................48

CONCLUSION ...................................................................................................49

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 12, 14, and 47 describes the commercial relationship between Broadcom and the Texas Defendants.  The material omitted on page 46 describes a non-public regulatory action.

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Achates Reference Publishing, Inc. v. Apple Inc.*,
  803 F.3d 652 (Fed. Cir. 2015) ................................................................passim

*Allied Chemical Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980)....................................................................................48, 49

*Apple Inc. v. Achates Reference Publishing, Inc.*,
  IPR2013-00080, 2013 WL 6514049 (PTAB Apr. 3, 2013) ..............................44

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
  55 F.3d 615 (Fed. Cir. 1995) .............................................................................29

*Cheney v. United States District Court for the District of Columbia*,
  542 U.S. 367 (2004)...........................................................................................49

*City of Arlington v. Federal Communications Commission*,
  133 S. Ct. 1863 (2013)......................................................................................40

*Click-to-Call Technologies, LP v. Oracle Corp.*,
  622 F. App'x 907 (Fed. Cir. 2015) ...................................................................38

*Director, Office of Workers' Compensation Programs v. Mangifest*,
  826 F.2d 1319 (3d Cir. 1987) ...........................................................................48

*Dynamic Drinkware, LLC v. National Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015) .........................................................................21

*Ericsson, Inc. v. D-Link Systems, Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ........................................................1, 6, 12, 13

*Hewlett-Packard Co. v. Mustek Systems, Inc.*,
  340 F.3d 1314 (Fed. Cir. 2003) ..................................................................29, 34

*In re Altera Corp.*,
  494 F. App'x 52 (Fed. Cir. 2012) .....................................................................49

*In re Calmar, Inc.*,
   854 F.2d 461 (Fed. Cir. 1988) ........................................................49

*In re Cuozzo Speed Technologies, LLC*,
   793 F.3d 1268 (Fed. Cir. 2015) ......................................................39

*In re Gleave*,
   560 F.3d 1331 (Fed. Cir. 2009) ......................................................21

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002) ......................................................22

*In re Kotzab*,
   217 F.3d 1365 (Fed. Cir. 2000) ......................................................22

*In re Regents of University of California*,
   101 F.3d 1386 (Fed. Cir. 1996) ......................................................48

*In re Telefonaktiebolaget LM Ericsson*,
   564 F. App'x 585 (Fed. Cir. 2014) ..............................................1, 16

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ......................................................49

*Lindahl v. Office of Personnel Management*,
   470 U.S. 768 (1985).......................................................................39

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
   No. 2015-1091, __ F.3d __, 2015 WL 7755665 (Fed. Cir. Dec. 2,
   2015) .............................................................................................38

*Preminger v. Secretary of Veterans Affairs*,
   517 F.3d 1299 (Fed. Cir. 2008) ......................................................37

*Reilly v. Office of Personnel Management*,
   571 F.3d 1372 (Fed. Cir. 2009) ......................................................39

*Sebelius v. Auburn Regional Medical Center*,
   133 S. Ct. 817 (2013).....................................................................41

*SightSound Technologies, LLC v. Apple Inc.*,
   No. 2015-1159, __ F.3d __, 2015 WL 8770164 (Fed. Cir. Dec. 15,
   2015) .............................................................................................38

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..........................................................................................45

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
    782 F.3d 671 (Fed. Cir. 2015) ...........................................................................30

*Versata Development Group, Inc. v. SAP America, Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) .........................................................................40

## DOCKETED CASES

*Achates Reference Publishing, Inc. v. Apple Inc.*,
    No. 15-842 (U.S. Dec. 29, 2015)..........................................................................2

*Cuozzo Speed Technologies v. Lee*,
    No. 15-446 (U.S. Jan. 15, 2016) ....................................................................2, 38

## STATUTES, REGULATIONS, AND RULES

35 U.S.C.
    § 314(d) ......................................................................................passim
    § 315(b)......................................................................................passim
    § 316(a)(5) .............................................................................15, 44

37 C.F.R. § 42.51(b)(2)..................................................................................15, 44

Office Patent Trial Practice Guide,
    77 Fed. Reg. 48,756 (Aug. 14, 2012) ................................................................45

Fed. Cir. R. 35(a)(1)............................................................................................38

## STATEMENT OF RELATED CASES

A petition for a writ of mandamus in the underlying *inter partes* review was previously before this Court. *In re Telefonaktiebolaget LM Ericsson*, Nos. 2014-127, -128, and -129, 564 F. App'x 585 (Fed. Cir. May 5, 2014). The panel was composed of Judges Lourie, Dyk, and Reyna. Judge Lourie authored the opinion of the Court.

The patent at issue in the present appeal, U.S. Patent No. 6,424,625 ("the '625 patent"), is involved in a case currently pending in the United States District Court for the Eastern District of Texas. *Ericsson, Inc. v. D-Link Sys., Inc.,* No. 10-cv-0473 (E.D. Tex.). This Court previously decided an appeal from that action. *Ericsson, Inc. v. D-Link Sys., Inc.*, Nos. 2013-1625, -1631, -1632, -1633, 773 F.3d 1201 (Fed. Cir. Dec. 4, 2014). The panel was composed of Judges O'Malley, Taranto, and Hughes. Judge O'Malley authored the opinion of the Court, and Judge Taranto filed an opinion dissenting-in-part.

There are two cases pending before this Court that have been designated as companions to the present appeal: (1) *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1944; and (2) *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1945.

The Supreme Court granted a petition for writ of certiorari to consider the circumstances under which a decision by the Patent Trial and Appeals Board ("the Board") to institute an *inter partes* review may be reviewed on appeal as well as

the claim construction methodology to be applied in *inter partes* review proceedings. *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446 (U.S. Jan. 15, 2016). There is an additional petition for writ of certiorari pending before the Supreme Court that concerns the circumstances under which a decision by the Board to institute an *inter partes* review may be reviewed on appeal. *Achates Reference Publ'g, Inc. v. Apple Inc.*, No. 15-842 (U.S. Dec. 29, 2015).

Counsel for Appellee Broadcom Corporation ("Broadcom") know of no other case pending in this or any other court that may affect or be affected by the Court's decision in this appeal.

## INTRODUCTION

The '625 patent never should have issued. The patent is directed to a so-called ARQ protocol for transferring data in a communication network. ARQ protocols are typically used to ensure that a receiver receives every data packet that is sent by the transmitter, for example by having the transmitter retransmit any packets that the receiver indicates it did not receive. The named inventors of the '625 patent believed that they were the first to disclose an ARQ protocol that accounts for the fact that some data is time-sensitive (and therefore has a "limited lifetime" of utility) by having a transmitter discard rather than resend outdated data. They were incorrect.

Wi-Fi One now concedes that prior art communication systems—including the Hettich prior art reference—disclose ARQ protocols that account for "limited lifetime" data by requiring that a transmitter discard outdated data and inform the receiver that the data has been discarded and will not be resent. Wi-Fi One instead attempts to distinguish Hettich based on the mere possibility that the Hettich receiver may receive certain non-discarded data packets in non-sequential order. The claim at issue contains no such sequential-reception requirement, and moreover Wi-Fi One concedes that in at least some circumstances Hettich discloses this extraneous element. The Board's factual determination that every claim limitation is disclosed by Hettich is supported by substantial evidence, including the clear disclosure of Hettich itself as well as the supporting testimony of Broadcom's expert.

Tellingly, rather than focusing on the merits of the Board's determination, Wi-Fi One devotes the bulk of its brief to arguing that Broadcom's petition for *inter partes* review was untimely. Indeed, on four separate occasions below, Wi-Fi One argued that Broadcom was in privity with parties who were time-barred from petitioning for review of the '625 patent under 35 U.S.C. § 315(b), and therefore that the Board erred in its decision on institution. The Board repeatedly found that Wi-Fi One's contentions were baseless and that it had properly instituted an *inter partes* review. While the Board's determination is plainly correct, 35 U.S.C.

§ 314(d) unequivocally deprives this Court of jurisdiction to review the Board's decision to institute an *inter partes* review, including the Board's determination that a petition is timely under 35 U.S.C. § 315(b).

Wi-Fi One has shown no error in the Board's decision, and it should be affirmed.

## STATEMENT OF ISSUES

1.      Whether the Board correctly determined that claim 1 of the '625 patent is unpatentable.

2.      Whether 35 U.S.C. § 314(d) deprives this Court of jurisdiction to review the Board's determination to initiate an *inter partes* review based on its assessment of the time bar set forth in 35 U.S.C. § 315(b).

## STATEMENT OF THE CASE

### A.    The Parties

Broadcom is one of the world's leading developers of semiconductor technologies.  Broadcom circuits are used worldwide to power numerous commercial devices and applications, including smartphones, wireless and broadband communication networks, and cloud-based storage solutions.

Wi-Fi One LLC is the owner of the '625 patent and a wholly owned subsidiary of non-practicing entity Optis Wi-Fi Holdings, LLC.[1]  Wi-Fi One also identified non-practicing entity PanOptis Patent Management, LLC as a real party-in-interest in the *inter partes* review proceedings.  A2.

## B.     The Prior Art

### 1.     ARQ Protocols

The '625 patent is directed to an Automatic Repeat Request ("ARQ") protocol for transferring data.  A51(1:8-10).  In communication networks, data is typically transferred in sequential "packets"[2] (with each packet assigned its own "sequence number" or "SN"), and ARQ techniques are used to address missing or damaged packets.  A52(4:16-30).  Various prior art ARQ protocols teach methods for a receiver to inform a transmitter that a packet was not received correctly so that the transmitter may resend it as many times as needed until it is received by the receiver, ensuring that the receiver receives every packet in a sequence before transferring the complete sequence to a higher layer to be processed.  A51(1:13-26); A52(3:6-9).

---

[1] During the pendency of the *inter partes* review, Telefonaktiebolaget LM Ericsson ("Ericsson") transferred ownership of the '625 patent to Wi-Fi One, though Ericsson retains some interest in the patent.  A556.  This brief refers to Wi-Fi One LLC and Ericsson collectively as "Wi-Fi One."

[2] "Packets" are also referred to interchangeably as "protocol data units" ("PDUs"), "cells," and "frames."  A362.

For example, the receiver may send the transmitter a positive acknowledgement ("ACK" or "PACK") indicating that certain data packets were received correctly. A51(1:41-44). In addition to or instead of sending positive acknowledgements, the receiver may send a negative acknowledgement ("NAK" or "NACK") indicating that a data packet was lost or an erroneous packet was received. A51(1:46-49, 2:16-19).

Prior art ARQ receivers use a limited "reception window" to keep track of which packets are received. A51(2:58-65); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1211 (Fed. Cir. 2014) (discussing reception windows). If a receiver detects a gap in the packet sequence (e.g., it does not receive a packet with sequence number N), it will use its reception "buffer" to temporarily store any subsequent packets (e.g., packets with sequence numbers greater than N) until it receives the missing packet, at which point it will pass the uninterrupted sequence of packets to a higher layer for processing. A51-52(2:66-3:9). Because the reception window is limited, if the receiving device receives a packet outside of the window, it will not accept the packet. A51(2:61-65). After the receiver receives the missing packet, the reception window moves forward. A51-52(2:66-3:9).

2.    **Hettich**

In 1996, Andreas Hettich published an academic paper ("Hettich")
disclosing an ARQ protocol that accounts for time-sensitive data by having a
transmitter discard rather than resend outdated data.  A796; A831-32.[3]

Hettich explains that in time-critical services, the transmitter should discard
data packets after they reach a particular "maximum delay" threshold.  A831.
Hettich teaches that packets must be discarded sequentially, i.e., the transmitter
must discard the packet number with sequence number N before it may discard the
packet with sequence number N+1.  A831.

When the Hettich receiver detects a missing or erroneously received packet,
it sends a request that the transmitter resend the missing packet  and waits for the
missing packet.  A831-32.[4]  The sequence number of the requested packet is
referred to as "RN."  A831.  If the packet with sequence number RN has been
discarded, the Hettich transmitter sends a Delay Protocol Data Unit ("Delay PDU")
to inform the receiver that the requested packet—and any preceding packets—have

---

[3] The full title of the Hettich reference is "Development and Performance
Evaluation of a Selective Repeat-Automatic Repeat Request (SR-ARQ) Protocol
for Transparent, Mobile ATM Access."  A796.  It was originally published in
German, *see* A609, but citations herein refer to the certified English translation.
*See* A795.

[4] As in other prior art ARQ systems, the Hettich receiver waits to receive missing
data packets before forwarding a group of packets to a higher layer of the
communication system.  A831.

been discarded.  A831.  The sequence number of the Delay PDU is set to be the

same as the sequence number of the requested packet:

> The Delay PDU is used to inform receivers that cells have been
> discarded.  It is only sent if the receiver requested a discarded cell ….
> [T]he Delay PDU is sent in the opposite direction instead of an
> acknowledgement and RN=SN, in which SN is the highest number of
> all of the discarded cells.

A831.

Upon receiving a Delay PDU, the receiver "stops waiting" for any missing

packets with a sequence number less than or equal to the Delay PDU sequence

number.  A832 ("If the receiver receives a Delay PDU, it stops waiting for cells

where the following applies for the number:  $N \leq RN$.")(italics in original).  The

receiver then shifts its reception window forward so that it will accept packets

subsequent to the discarded packets.  A832.

By way of example, in a system where the receiver has a reception window

capable of receiving three packets, the receiver will wait to receive data packets 1,

2, and 3.  If data packets 1, 2, and 3 have been sent by the transmitter, but only

packet 2 has been received correctly, the receiver will request retransmission of

packets 1 and 3.  If the packets are time-sensitive and the transmitter has discarded

packets 1 and 3, the transmitter responds by sending a Delay PDU with its

sequence number set to 3 [SN=3].  The receiver then stops waiting for packets 1

and 3 (allowing packet 2 to be transferred to a higher layer of the system) and shifts its reception window forward to be able to receive packets 4, 5, and 6.

### C.    The '625 Patent

#### 1.    The '625 claim and specification

The '625 patent purports to disclose the first ARQ protocol to account for time-sensitive data by having a transmitter discard rather than resend outdated data.  A52(4:9-20) ("[C]urrent ARQ methods do not recognize and allow for situations where data packets have a limited lifetime, and therefore fail to minimize bandwidth usage by not sending (or resending) significantly delayed or outdated data packets.  …  In accordance with exemplary embodiments of the invention, ARQ techniques are provided that minimize bandwidth usage by accounting for data packets that have an arbitrary but limited lifetime.").

Claim 1 of the '625 patent is directed to an ARQ protocol in which a transmitter discards certain unacknowledged (i.e., not correctly received) data packets and instructs the receiver that, rather than waiting for the missing data to be resent, it should proceed with accepting subsequent data packets and "release any expectation" of receiving the missing data:

> 1.  A method for discarding packets in a data network employing a packet transfer protocol including an automatic repeat request scheme, comprising the steps of:
>
> a transmitter in the data network commanding a receiver in the data network to a) receive at least one packet having a sequence number

that is not consecutive with a sequence number of a previously received packet and b) release any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet; and

the transmitter discarding all packets for which acknowledgment has not been received, and which have sequence numbers prior to the at least one packet.

A55(10:13-22).

The specification explains that, in the alleged invention, the transmitter discards outdated data, and if the receiver subsequently requests that the transmitter resend that data, the transmitter will instead send a message "command[ing the receiver] to skip or overlook the packets which have been discarded, or in other words, to ***release any expectation*** of receiving the packets which have been discarded."  A53(5:22-25).[5]

Upon receiving this command (referred to in the specification as "RPEB=TRUE"), the receiver stops waiting for the missing packets, processes any packets that were being held in the buffer pending reception of the missing packets, and moves the reception window forward to accept subsequent packets. A55(9:1-4) ("When a correct packet with RPEB=TRUE is received, then all packets preceding this packet and up to the next outstanding packet will be released from the buffer and forwarded to the higher layer."); A52(4:26-29) ("[The

---

[5] Except as otherwise noted, each emphasis in this brief is added.

command] force[s] the receiver to accept packets subsequent to one or more erroneous or unreceived packets that have been discarded and not resent.").

### 2.    The '625 patent prosecution history

During prosecution of the '625 patent, the applicants amended claim 1 to require that each of the claimed method steps must be performed by a transmitter. The Examiner rejected original claim 1 as obvious in light of several prior art references, including U.S. Patent No. 7,726,027 ("Nakamura"), which is directed to a *receiver* that discards unacknowledged data packets.  A1190-91.  To overcome that rejection, the applicants asserted that Nakamura "fails to disclose or suggest *a transmitter* in the data network discarding at least one packet that has been sent by the transmitter," A1190(emphasis in original), and amended claim 1 to recite the additional limitation that each step of the claimed steps is performed by a transmitter:

> 1.  A method for discarding packets in a data network employing a packet transfer protocol including automatic repeat request scheme, comprising the steps of:
>
> **a transmitter in the data network** commanding a receiver in the data network to a) receive at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet and b) release any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet; and
>
> **the transmitter** discarding all packets for which acknowledgement has not been received, and which have sequence numbers prior to the at least one packet.

- 11 -

A1194(emphasis in original).  With the foregoing amendment, the patent issued on

July 23, 2002.  A38.

### D.    The Eastern District of Texas Litigation

On September 14, 2010, Wi-Fi One filed suit in the United States District

Court for the Eastern District of Texas, accusing seven wireless communications

companies—D-Link Systems, Inc., Netgear, Inc., Belkin International, Inc., Dell,

Inc., Toshiba Corporation, Acer Inc., and Gateway Inc. (the "Texas

Defendants")—of infringing nine patents that Wi-Fi One alleged were essential to

the IEEE 802.11(n) wireless standard, including the '625 patent.  *Ericsson*, 773

F.3d at 1213.[6]  Although Wi-Fi One's allegations were based in part on the Texas

Defendants' use of Broadcom's chips in their products, Wi-Fi One chose not to sue

Broadcom.  Broadcom never became a party to the litigation, ███████████

███████████████████████████████████████████████████████.

A1447(¶¶2-5).

---

[6]  The Texas litigation and subsequent appeal also involved U.S. Patent Nos.
6,772,215 ("the '215 patent") and 6,466,568 ("the '568 patent").  In separate *inter
partes* reviews, the Board found that the challenged claims of the '215 patent and
'568 patent were unpatentable, and those determinations are the subject of the co-
pending cases that have been designated as companions to the present appeal, *Wi-
Fi One, LLC v. Broadcom Corp.*, No. 2015-1944, and *Wi-Fi One, LLC v.
Broadcom Corp.*, No. 2015-1945.

Following an eight-day trial, the jury found that the Texas Defendants infringed the '625 patent. A2102. The jury also found that the '625 patent was not anticipated by a prior art publication ("Petras"). *Ericsson*, 773 F.3d at 1213.

The Texas Defendants appealed, *inter alia*, the finding of infringement of the '625 patent and the finding that Petras did not anticipate the '625 patent. *Ericsson*, 773 F.3d at 1214. This Court reversed the infringement finding and affirmed the finding that the '625 patent was not anticipated by Petras. *Id.* at 1236.

### E.    The Proceedings Before The Board And The Prior Petition For Mandamus

Broadcom petitioned for *inter partes* review of claim 1 of the '625 patent on September 30, 2013. A361. Broadcom identified several grounds of invalidity, including that claim 1 is anticipated by Hettich. A361. In support of its petition, Broadcom submitted testimony from Dr. Harry Bims, an expert in the field of wireless communications and communication protocols. A361-62; A738-41(¶¶2-11). Dr. Bims explained how Hettich discloses each element of claim 1. For example, he testified that Hettich discloses "commanding a receiver [to] receive" and "commanding a receiver [to] release" because the Delay PDU instructs the receiver to "shift the window" to receive packets following a gap in the data packet sequence (e.g., packets with sequence numbers greater than N) and to "stop waiting" for packets that have been discarded (e.g., packets with sequence numbers less than or equal to N). A763-64(¶¶73-74). Dr. Bims further explained that

Hettich discloses the "discarding" step because the transmitter discards the data for all packets with a sequence number less than or equal to N, i.e., the same packets that it commands the receiver to "release any expectation of receiving." A763-65(¶¶74-76).

On December 16, 2013, Wi-Fi One filed a motion for additional discovery related to its contention that Broadcom allegedly had the opportunity to control the Texas Defendants in the Texas litigation and therefore that its petition for *inter partes* review was time-barred under 35 U.S.C. § 315(b). A74. Broadcom submitted its opposition on December 20, 2013, explaining that ███████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████. A98; *see also* A1447(¶¶2-5).

On January 24, 2014 the Board denied Wi-Fi One's motion. A116. The Board carefully reviewed Wi-Fi One's discovery requests (A106-07); the statute, legislative history, regulations, and prior Board decisions regarding requests for additional discovery (A108-09); the statute, regulations, and court decisions

regarding privity (A109-13); and the arguments and facts asserted by Wi-Fi One (A113-17).  "After weighing the factors surrounding the issue of privity as advanced by [Wi-Fi One]," the Board found that Wi-Fi One "has not met its burden of demonstrating that additional discovery is in the interests of justice." A119; *see also* 35 U.S.C. § 316(a)(5); 37 C.F.R. § 42.51(b)(2).

On February 7, 2014, Wi-Fi One requested a rehearing of its motion for additional discovery alleging that Broadcom's actions indicate a community of interest with the Texas Defendants that was served in the Texas litigation.  A127. The Board denied Wi-Fi One's request on February 20, 2014.  A130.  The Board explained that Wi-Fi One "ignores the weight of authority cited by the Board that shows control over prior litigation is a crucial factor normally required to bind a party to that prior litigation using collateral estoppel," A132, and held that Wi-Fi One "failed to meet its burden of showing that additional discovery would have more than a mere possibility of showing that Broadcom should be bound by the Texas litigation."  A134-35.

On March 10, 2014, the Board issued its Decision on Institution, finding that there was a reasonable likelihood that claim 1 of the '625 patent was unpatentable in light of several prior art references, including Hettich.  A150.  The Board elected not to institute review based on several additional prior art references on the ground that the additional references were redundant.  A155.

On April 1, 2014 Wi-Fi One petitioned this Court for a writ of mandamus seeking to overturn the Board's denial of its motion for additional discovery related to the privity issue. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014).[7] This Court held that Wi-Fi One had failed to meet the "heavy burden" required for mandamus relief, and denied the petition without prejudice to Wi-Fi One attempting to raise its arguments on appeal after final decision by the Board. *Id.* at 586.

Wi-Fi One filed a Patent Owner Response on June 11, 2014, and submitted a supporting declaration by its expert Dr. Akl. A221; A2106. Wi-Fi One argued that Hettich does not disclose "commanding a receiver [to] receive" because Delay PDU merely causes the receiver to "shift the [reception] window" but does not cause actual receipt of any particular packet. A266-67. Wi-Fi One also argued that Hettich does not disclose the "commanding a receiver [to] release" and "discarding" elements because it is theoretically possible that after receiving a Delay PDU (e.g., sequence number N), the next-received packet may not be the next-in-sequence packet (e.g., the receiver could receive N+2 rather than N+1 as the next-received packet), and that therefore the receiver would be expecting certain packets that the transmitter had not discarded. A267-71. Wi-Fi One also

---

[7] Wi-Fi One filed essentially identical petitions for writs of mandamus in the *inter partes* reviews concerning the '215 patent and '568 patent, and the Court issued a consolidated opinion that addressed all three petitions.

asserted that Broadcom's petition was time-barred on the grounds that Broadcom was in privity with the Texas Defendants and "could have exercised control" over the Texas litigation. A239.[8]

On October 1, 2014, Broadcom filed its Reply. A284. Broadcom explained that the Hettich Delay PDU "command[s] a receiver [to] receive" because, contrary to Wi-Fi One's theory, the claim limitation is met by a command that requires the receiver to "shift [its] window" in order to receive subsequent packets. A297. Broadcom further explained that Hettich teaches the "commanding a receiver [to] release" and "discarding" elements because the terms do not require that the receiver receive the Delay PDU (e.g., sequence number N) immediately followed by the next-in-sequence packet (e.g., sequence number N+1) as Wi-Fi One contends, and moreover Hettich discloses those steps even under Wi-Fi One's incorrect interpretation because the Hettich transmitter would at least sometimes transmit a Delay PDU with sequence number N immediately followed by a data packet with sequence number N+1. A298-99; A1665-67(¶¶6-8). Broadcom also

---

[8] In conjunction with its Patent Owner Response, Wi-Fi One submitted a motion to amend claim 1 by adding the further limitation that the transmitter command the receiver to receive a packet with a sequence number "outside of the receiver window." A426-27. The Board ultimately denied the motion on the grounds that Wi-Fi One's proposed amendment was not supported by the written description and that the proposed amended claim was rendered obvious by Hettich in combination with an additional prior art reference ("Vornefeld"). A29-35. Wi-Fi One did not appeal that determination.

explained that, with respect to the time-bar issue, Wi-Fi One was simply rearguing its "privity" theory that the Board had already rejected multiple times. A287-90.

After an oral hearing, the Board issued its Final Written Decision. The Board held that Wi-Fi One's arguments and evidence regarding the "privity" issue were not substantively different from the arguments and evidence it had already found to be insufficient, and affirmed its decision to institute *inter partes* review based on the timeliness of the petition. A7-8.

On the merits, the Board found that Hettich discloses every limitation of claim 1 of the '625 patent. A19. In particular, the Board found that Hettich discloses the "commanding a receiver [to] receive" step because the Delay PDU causes the receiver to "shift[] the [reception] window" and accept subsequent data packets. A21. The Board further found that Hettich discloses the "commanding a receiver [to] release" step and the "discarding" step because the transmitter discards all data packets with sequence numbers less than or equal to the Delay PDU sequence number, and instructs the receiver to "stop waiting" for those packets. A22-25. The Board rejected Wi-Fi One's argument that the claim requires that the receiver receive the Delay PDU (e.g., sequence number N) immediately followed by the next-in-sequence packet (e.g., sequence number N+1), and held that "claim 1 does not require that the next received packet have a particular sequence number." A23.

On April 6, 2015, Wi-Fi One filed a request for a rehearing of the Board's Final Written Decision, arguing that the Board had applied an erroneous legal standard in its privity determination that focused solely on whether Broadcom had the ability to control the Texas Defendants in the Texas litigation, and had not considered whether the Texas Defendants were controlling Broadcom's actions in the *inter partes* review.  A314-15.  The Board denied Wi-Fi One's request on June 1, 2015, explaining that Wi-Fi One had not identified any error in the Board's analysis.  A326-31.  In particular, the Board explained that its prior decision "focuses primarily on Broadcom's ("Petitioner") exercise of control, or opportunity to exercise control over the prior District Court lawsuit (Req. 8), that is because that was the focus of Patent Owner's Motion for Additional Discovery."  A327.  The Board further explained that its prior decision "did not characterize the legal standard, for all cases, as being limited strictly to a petitioner's control, or opportunity to control, a non-party in previous litigation.  To the contrary, it addressed control, or opportunity to control, by a non-party generally as one of  a number of factors."  A327-28.  The Board found that, just as Wi-Fi One had failed to put forth any evidence that Broadcom had the ability to exercise control over the Texas Defendants in the Texas litigation, it had similarly failed to put forth any evidence that the Texas Defendants were controlling Broadcom's actions in the *inter partes* review.  A326-32.  Thus, the Board reaffirmed its determination that

- 19 -

the Texas Defendants were not real parties in interest or in privity with Broadcom, and that the *inter partes* review was not time-barred under 35 U.S.C. § 315(b). A332.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The Board correctly found that claim 1 of the '625 patent is unpatentable. The Board's conclusion that every claim limitation is disclosed by Hettich is supported by substantial evidence.

The '625 patent is directed to a simple ARQ protocol in which a transmitter discards outdated data packets, informs the receiver that it will not receive those discarded packets, and commands the receiver to move its reception window forward so that the receiver accepts data packets subsequent to the discarded packets. Hettich discloses such an ARQ protocol.

Wi-Fi One contends that Hettich fails to disclose certain claim limitations because it is amenable to a hypothetical scenario in which the receiver receives a command signal (e.g., a signal informing the receiver that it will not receive packets with a sequence number less than or equal to N and commanding it to receive packets with a sequence number greater than N) and then receives a non-sequential signal as its next data packet (e.g., the receiver receives a data packet with sequence number N+2 as the immediate subsequent packet rather than the

data packet with sequence number N+1).  Wi-Fi One's convoluted theory has no basis in the '625 patent, which contains no requirement that the receiver receive data packets in any particular sequence.  Moreover, as Wi-Fi One concedes, the Hettich receiver will in at least some circumstances receive data packets in sequential order, and thus Hettich discloses Wi-Fi One's extraneous limitation.

Wi-Fi One attempts to circumvent the Board's well-supported factual determinations by arguing that the Board erred in its determination to institute an *inter partes* review based on its assessment of the time bar set forth in 35 U.S.C. § 315(b).  The Board correctly determined that the defendants in Wi-Fi One's prior lawsuit were not real parties in interest or in privity with Broadcom and therefore Broadcom's petition for *inter partes* review was timely filed, and in any event 35 U.S.C. § 314(d) deprives this court of jurisdiction to review the Board's determination.

The Board's decision should be affirmed.

## ARGUMENT

### I.    STANDARD OF REVIEW

Anticipation, including whether a limitation is disclosed in a prior art reference, is a question of fact.  *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009).  The Board's factual findings are to be upheld unless they are not supported by substantial evidence.  *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800

F.3d 1375, 1378 (Fed. Cir. 2015). Substantial evidence is more than a "mere scintilla of evidence" but something less than the "weight of the evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

35 U.S.C. § 314(d) prohibits this Court from reviewing the Board's determination to initiate an *inter partes* review based on its assessment of the time-bar set forth in 35 U.S.C. § 315(b). *Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652, 658 (Fed. Cir. 2015).

## II. THE BOARD CORRECTLY DETERMINED THAT CLAIM 1 OF THE '625 PATENT IS UNPATENTABLE.

The '625 patent purports to disclose the first ARQ protocol to account for "limited lifetime" data by having a transmitter discard rather than resend outdated data. A52(4:9-20) ("[C]urrent ARQ methods do not recognize and allow for situations where data packets have a limited lifetime, and therefore fail to minimize bandwidth usage by not sending (or resending) significantly delayed or outdated data packets. … In accordance with exemplary embodiments of the invention, ARQ techniques are provided that minimize bandwidth usage by accounting for data packets that have an arbitrary but limited lifetime."). Claim 1 thus broadly

claims an ARQ protocol in which a transmitter discards certain unacknowledged (i.e., not received) data packets and instructs the receiver that, rather than waiting for the missing data to be resent, it should proceed with accepting subsequent data packets and "release any expectation" of receiving the missing data.

Wi-Fi One now concedes that prior art references—including Hettich—disclose ARQ protocols in which a transmitter discards outdated data and informs the receiver that the data has been discarded and will not be resent. Opening Brief of Appellant ("Br.") 42-43. Wi-Fi One contends, however, that Hettich does not anticipate claim 1 only because the Hettich transmitter allegedly does not perform two particular method steps: (1) the "commanding a receiver [to] release" step; and (2) the "discarding" step. Br. 44-50. As the Board correctly found, however, Hettich discloses both of those claim elements—along with every other claim limitation. A18-25. As set forth below, the Board's factual findings are supported by substantial evidence and should be affirmed.

**A.    The Board's Factual Finding That Hettich Discloses The "Commanding A Receiver [To] Release" Step Is Supported By Substantial Evidence.**

**1.    Hettich discloses the "commanding a receiver [to] release" step because the Delay PDU commands a receiver to release expectations of receiving any data packet with a sequence number less than or equal to the Delay PDU.**

As demonstrated by the express disclosure of Hettich and the testimony of Broadcom's expert, which the Board was entitled to accept, Hettich discloses the

step of commanding a receiver to "release any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet." A22-23.

Hettich discloses an ARQ protocol that minimizes bandwidth usage by accounting for data packets that have a limited lifetime. A831. Hettich explains that, in certain time-critical services, the transmitter should discard data packets once they reach a particular "maximum delay" threshold. *Id.* (describing the use of a "maximum delay" for time-sensitive services and explaining that "[t]his type of service could include a video conference connection, where the loss of individual cells is not significant, but where the maximum delay must be adhered to due to the synchronizations and echo effects.").

Just as in the '625 patent and the prior art ARQ systems discussed in the '625 patent, the Hettich receiver waits to receive missing data packets before forwarding a group of packets to a higher layer of the communication system. A831; A52(3:6-9); A55(9:1-4). If the Hettich receiver detects a missing or erroneously received packet, it sends a request that the transmitter resend the missing packet and waits for the missing packet. A831-32. In that scenario, the Hettich transmitter may resend the missing data, or it may send a Delay Protocol Data Unit ("Delay PDU") to inform the receiver that one or more requested packets have been discarded. A831 ("The Delay PDU is used to inform receivers

that cells have been discarded.  It is only sent if the receiver requested a discarded cell.").

The Delay PDU identifies a particular sequence number in the data packet sequence that represents the latest-in-sequence of all discarded packets.  A831 (explaining that the Delay PDU sequence number "is the highest number of all the discarded cells" and that "there cannot be valid (not discarded) cells with lower sequence numbers").  In response, the receiver moves its reception window forward so that it will accept packets subsequent to the discarded packets.  A832 (after receiving the Delay PDU, the receiver "shifts the window and issues a corresponding acknowledgement").  As Hettich explains, the receiver "stops waiting" for any missing packets with a sequence number less than or equal to the sequence number identified in the Delay PDU.  A832 ("If the receiver receives a Delay PDU, it stops waiting for cells where the following applies for the number: $N \leq RN$.")(italics in original).

Thus, in the example below, a Delay PDU with sequence number N commands a receiver to release expectations of receiving any outstanding packets less than or equal to N, such as N-1, N-2, etc.:

A2838.  The receiver is therefore commanded to receive packets with a sequence number greater than N (i.e., N+1, N+2, etc.).  A21; A763-64(¶74); A1665-66(¶6). The Delay PDU is thus a command that causes the receiver to move its reception window forward to receive "at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet" and further commands the receiver to "release any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet."  A21-23; A763-64(¶¶72-74); A1665-66(¶6).

Further by way of example, in a system with a reception window capable of receiving three packets, the receiver will wait to receive data packets 1, 2, and 3.  If data packets 1, 2, and 3 have been sent by the transmitter, but only packet 2 has been received correctly, the receiver will request retransmission of packets 1 and 3. If the packets are time-sensitive and the transmitter has discarded packets 1 and 3, the transmitter responds by sending a Delay PDU with its sequence number set to 3.  The receiver then stops waiting for packets 1 and 3 (allowing packet 2 to be transferred to a higher layer of the system) and shifts its reception window forward to be able to receive packets 4, 5, and 6.  The Delay PDU thus commands the receiver to move its reception window forward to receive "at least one packet [4, 5, and 6] having a sequence number that is not consecutive with a sequence number of a previously received packet [2]" and further commands the receiver to "release

any expectation of receiving packets [1, 2 and 3] having sequence numbers prior to the at least one packet [4, 5, and 6]."

## 2. Wi-Fi One's contrary arguments are without merit.

Wi-Fi One contends that the Board erred in finding, as a factual matter, that Hettich discloses the "commanding a receiver [to] release" step. Br. 44-48. As set forth above, the Board's finding is supported by substantial evidence. Moreover, Wi-Fi One's attempt to distinguish Hettich fails on two grounds—Wi-Fi One argues that Hettich fails to disclose an extraneous step that is not a claim element, and in any event Hettich discloses that extraneous step.

***First***, Wi-Fi One argues that Hettich does not disclose the "commanding a receiver [to] release" step because the receiver could receive a Delay PDU (e.g., sequence number N) followed by a non-sequential data packet (e.g., sequence number N+2) and in that scenario the receiver would not release its expectation of receiving any intervening packets (e.g., sequence number N+1). Br. 44-45. Wi-Fi One thus contends that the "commanding a receiver [to] release" step is only performed if the first packet received after the Delay PDU is sequential, i.e., the transmitter receives a Delay PDU with sequence number N followed immediately by a data packet with sequence number N+1. Br. 45.

Claim 1, however, does not include this requirement. *See* A55(10:13-25). Indeed, while Wi-Fi One's argument relies exclusively on what steps a ***receiver***

may or may not perform (*see* Br. 44-45), claim 1 is directed solely to steps that are performed by a ***transmitter***.  A55(10:13-25).  Thus, Wi-Fi One's arguments provide no basis for distinguishing Hettich.

Moreover, Wi-Fi One's argument is premised on the incorrect assumption that the "commanding a receiver [to] release" element requires a command that the receiver release expectations of receiving any packets with a sequence number prior to the next packet that the receiver actually receives.  *See* Br. 44-45.  That is contrary to the language of the claim, which requires that the transmitter command the receiver to release expectations of receiving outstanding packets with a sequence number prior to the packet(s) it is commanded to receive, i.e., "at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet."  A55(10:17-22).  Wi-Fi One does not challenge the Board's correct determination that the Hettich transmitter performs the "commanding a receiver [to] receive" step by commanding the receiver to receive packets with a sequence number greater than the Delay PDU (e.g., packets with sequence numbers N+1, N+2, etc.).  *See* A21; Br. 42-50.  Thus, the "outstanding packet[s]" that Wi-Fi One relies on for its argument are not packets that the receiver should "release any expectation of receiving" but are in fact ***packets that the receiver is commanded to receive***.  There is no dispute that the transmitter commands the receiver to release any expectation of receiving packets

that precede those commanded-to-receive packets (e.g., packets with sequence number N, N-1, N-2, etc.).  Br. 44.  Thus, the transmitter performs all that is required of the "commanding a receiver [to] release" step.

*Second*, even if the "commanding a receiver [to] release" element were to require Wi-Fi One's proposed reception-in-succession requirement (though it does not), Hettich nevertheless discloses this element.  As Broadcom's expert explained, the Delay PDU "tells the receiver to release any expectation of receiving unacknowledged packet N (and any of N-1, N-2, etc.), and to start receiving packets beginning with N+1.  Therefore, it would make sense for the transmitter to send the [Delay PDU with sequence number N] and then send packet N+1."  A1665.  Indeed, Wi-Fi One concedes that in at least some instances, the Hettich receiver will receive a Delay PDU with a sequence number N immediately followed by a data packet with sequence number N+1.  *See* Br. 45 (arguing only that it is possible that packets "may exist" that have sequence numbers between the Delay PDU and the next received packet).  This concession is fatal to Wi-Fi One's position, as a method claim (such as claim 1) is anticipated by art that discloses the claimed method regardless of how frequently that method is performed.  *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) ("[A] prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention."); *cf. Bell Commc'ns Research,*

- 29 -

*Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995) ("[A]n accused product that sometimes, but not always, embodies a claimed method nonetheless infringes.").

**Finally**, Wi-Fi One contends that the Board was inconsistent in whether it considered the Delay PDU or the packet following the Delay PDU to be the "out of sequence" packet described in the claims. Br. 45-48. The Board accurately described Hettich and properly found that it anticipates,[9] but Wi-Fi One's argument is once again premised on a legally irrelevant distinction, because Hettich anticipates regardless of which packet is considered the "out of sequence" packet. There is no dispute that the Hettich transmitter commands the receiver to accept a gap in the data packet sequence—it informs the receiver that data packets less than or equal to N have been discarded, and the receiver "shifts the window"

---

[9] To the extent there is any ambiguity in the language Wi-Fi One relies on for its argument, the Board appeared to be referring to the fact that the receiver actually receives the Delay PDU. *See* A23. But there is no inconsistency in the Board's analysis of Hettich—the Board repeatedly explained that a Delay PDU with sequence number N commands a receiver to receive subsequent data packets (e.g., N+1, N+2, etc.) and to release any expectation of receiving data packets with a sequence number less than or equal to N. A19-21; A23. Thus, even if Wi-Fi One were correct that the Board inadvertently referred to the Delay PDU rather than a subsequent data packet that the Delay PDU commands the receiver to receive, it amounts to at most a harmless scrivener's error. *See, e.g.*, *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 n.3 (Fed. Cir. 2015) ("We do not ascribe any weight to this [allegedly inconsistent] statement and consider it a scrivener's error [because it] is inconsistent with the thrust of the district court's discussion[.]").

forward so that it may accept data packets with sequence numbers N+1 and higher. A21; A831-32; Br. 44-45. Thus, regardless of whether the Delay PDU is viewed as the last packet in the gap or the first packet following the gap, the transmitter commands the receiver to "stop[]waiting" for the missing data packets that precede the out-of-sequence packets it is commanded to accept. A831-32; A763-64(¶¶72-74); A1665-66(¶6).

### B. The Board's Factual Finding That Hettich Discloses The "Discarding" Step Is Supported By Substantial Evidence.

#### 1. Hettich discloses the "discarding" step because the transmitter discards all unacknowledged packets with sequence numbers less than or equal to the Delay PDU.

Hettich further discloses the claim 1 step of "discarding all packets for which acknowledgement has not been received, and which have sequence numbers prior to the at least one packet [that the transmitter commanded the receiver to receive]." *See* A55(10:23-25). As discussed above, the Hettich transmitter discards data packets that have exceeded a "maximum delay." A831. When the Hettich receiver detects a missing or damaged data packet, it sends a message requesting that the transmitter resend the packet. A831. If the transmitter has already discarded the packet, it sends a Delay PDU informing the receiver of the latest-in-sequence discarded packet. A831; A763-64(¶74). The receiver stops waiting for the missing packet (or packets) and shifts its reception window forward even though there is a gap in the sequence of received packets, i.e., the transmitter

has commanded the receiver to receive packets with a sequence number greater than the Delay PDU.  A832; A763-64(¶74); A1665-66(¶6).  Because the Delay PDU sequence number N represents the latest-in-sequence discarded packet, the transmitter has necessarily discarded all unacknowledged packets less than or equal to N.  A831; A763-65(¶¶74-76); A1665-67(¶¶6-8).  Thus, as the Board correctly found, the Hettich transmitter performs the claimed "discarding" step. A23-25.

### 2.    Wi-Fi One's contrary arguments are without merit.

Wi-Fi One contends that the Board erred in finding that Hettich discloses the "discarding" step for largely the same reasons that it contends the Board erred in finding that Hettich discloses the "commanding a receiver [to] release" step.  *See* Br. 48-50.  As discussed above, the Board's finding is supported by substantial evidence, and once again Wi-Fi One argues that Hettich fails to disclose elements that are not required by the claims and that Hettich discloses in any event.

*First*, Wi-Fi One contends that the Hettich transmitter does not perform the discarding step because the Hettich receiver does not necessarily receive the Delay PDU (e.g., sequence number N) immediately followed by the next-in-sequence packet (e.g., sequence number N+1), and therefore the Hettich transmitter may have "non-discarded" packets with sequence numbers between the Delay PDU and the next-received packet.  Br. 48-49.  As with Wi-Fi One's similar argument with

- 32 -

respect to the "commanding a receiver [to] release" limitation (*see supra* pp.27-29), Wi-Fi One's argument is based on incorrect and irrelevant distinctions.

The "discarding" step merely requires that the transmitter discard the packets that precede the set of packets that the transmitter commands the receiver to receive, i.e., the "at least one packet" that the receiver is commanded to receive as part of the "commanding a receiver [to] receive" step. A55(10:22-25). The Board correctly found that the Hettich transmitter performs the "commanding a receiver [to] receive" step by commanding the receiver to receive packets with a sequence number greater than the Delay PDU sequence number (i.e., packets with sequence numbers N+1, N+2, etc.), and Wi-Fi One does not challenge that determination on appeal. *See* A21; Br. 42-50. Thus, the allegedly "non-discarded" packets that Wi-Fi One relies on for its argument are not packets that the transmitter is meant to ***discard*** (i.e., unacknowledged packets with "sequence numbers prior to the at least one packet") but packets that the receiver is commanded to ***receive*** (i.e., "at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet"). There is no dispute that the transmitter discards the data packets that precede those commanded-to-receive packets (i.e., packets with sequence number N, N-1, etc.). *See* Br. 43. Thus, the transmitter performs all that is required of the "discarding" step.

Moreover, Wi-Fi One again concedes that the Hettich receiver will at least sometimes receive the Delay PDU immediately followed by the next-in-sequence packet. *See* Br. 49 (arguing only that the Hettich transmitter "*may*" under some circumstances contain "non-discarded" packets with sequence numbers between the Delay PDU and the next-received packet). Thus, even under Wi-Fi One's incorrect interpretation, the Hettich transmitter *sometimes* performs the "discarding" step—and that is sufficient for purposes of anticipating the claimed method. *See Hewlett-Packard*, 340 F.3d at 1326 ("[A] prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention.").

*Second*, Wi-Fi One contends that the Board erred in finding that the sequence number referenced in the Delay PDU is the same as the sequence number of the Delay PDU itself. Br. 49-50. Wi-Fi One is incorrect—Hettich states that in the Delay PDU "RN=SN," meaning that the Delay PDU sequence number ("SN") *is* the sequence number of the missing or damaged packet requested by the receiver ("RN"), and thus it is simply the case that the underlying *data* that previously corresponded to that sequence number has been discarded. A831. But this is once again an irrelevant distinction—even under Wi-Fi One's incorrect interpretation, the Hettich transmitter performs the "discarding" step because it commands the receiver to receive data packets with a sequence number greater than the sequence

number conveyed by the Delay PDU and discards all data packets with a sequence number less than or equal to that sequence number.  *See* A831-32.

*Finally*, Wi-Fi One repeats its argument that the Board was inconsistent as to whether the Delay PDU (e.g., sequence number N) or the next-in-sequence data packet (e.g., sequence number N+1) is the "out of sequence" packet referenced in the claims.  Br. 48-49.  Yet again, this alleged distinction is irrelevant because Hettich anticipates claim 1 under either interpretation.  The Hettich transmitter discards data packets with sequence numbers less than or equal to N and commands the receiver to receive data packets with sequence numbers greater than N.  A831-32; A21; A24.  Thus, regardless of which packet is considered the "out of sequence" packet, the Hettich transmitter discards all unacknowledged packets with lower sequence numbers and therefore performs the "discarding" step.

## III.    THE BOARD'S DETERMINATION TO INITIATE AN *INTER PARTES* REVIEW IS BOTH CORRECT AND UNREVIEWABLE.

### A.    35 U.S.C. § 314(d) Deprives This Court Of Jurisdiction To Review The Board's Determination To Initiate An *Inter Partes* Review.

Wi-Fi One asks this Court to overturn the Board's determination to institute the underlying *inter partes* review based on its assessment of the time bar set forth in 35 U.S.C. § 315(b).  Br. 17-41.[10]  Congress, however, has mandated that the

---

[10] Wi-Fi One's Section 315(b) arguments are identical to the Section 315(b) arguments set forth in its briefs in the companion appeals.  For avoidance of doubt, Broadcom has included identical rebuttals in its three responsive briefs.  The page

Board's determination whether to institute an *inter partes* review is "final and nonappealable," 35 U.S.C. § 314(d), and thus this Court has no jurisdiction to review the Board's determination. *Achates*, 803 F.3d at 659.

This Court squarely resolved the question of whether the Board's Section 315(b) determination is appealable in *Achates*—a case that is factually indistinguishable from the present dispute. In that case, Apple petitioned for *inter partes* reviews of several patents held by Achates. *Id.* at 653. In response, Achates asserted that Apple's petitions were untimely because Apple was in privity with certain parties that were time-barred under Section 315(b), and Achates moved for additional discovery related to a "blank indemnification agreement" that it argued could demonstrate a privity relationship between Apple and the time-barred parties. *Id.* at 654. The Board denied the motion on the grounds that there was "no basis to believe that even if the blank indemnification agreement had been signed, it would show [any time-barred parties] to be real parties in interest or in privity with Apple as those terms are used in § 315(b)." *Id.* The Board further explained that there was no evidence that any of the time-barred parties had the right to intervene or control Apple's defense to any charge of patent infringement, and concluded that none of the time-barred parties were real parties in interest or

---

number citations in each brief refer to Wi-Fi One's corresponding opening brief and the corresponding joint appendix in each appeal.

privies of Apple. *Id.* Thus, based on its assessment of the Section 315(b) time-bar, the Board instituted an *inter partes* review of the challenged patents. *Id.* During the merits phase, Achates reasserted its theory that Apple's petitions were time-barred under § 315(b), and in its final written decisions, the Board reaffirmed its earlier decisions that Apple had timely filed its petitions. *Id.* On appeal, Achates challenged the Board's final written decisions, arguing that the Board erred in denying its motions for additional discovery and in concluding that Apple's petitions were not time-barred under § 315(b). *Id.*

The Court held that the language of Section 314(d) is clear and controlling: "35 U.S.C. § 314(d) prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of § 315(b)." *Id.* at 658. Nor is there any exception for a claim that the Board's Section 315(b) determination rendered its actions *ultra vires*, as such "statutory interpretation disputes fall outside this [*ultra vires*] exception." *Id.* at 658-59.

Wi-Fi One contends that *Achates* was wrongly decided and should not apply in this case. Br. 17-28. Wi-Fi One omits any discussion of stare decisis, but there can be no doubt that this Court may not disregard its own precedent. *See, e.g.*, *Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) ("A prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en*

*banc*."); *see also* Fed. Cir. R. 35(a)(1) ("[O]nly the court *en banc* may overrule a

binding precedent.").  In the absence of *en banc* review or an intervening decision

by the Supreme Court,[11] the Court may not overturn *In re Cuozzo*, *Achates*, and the

numerous subsequent cases affirming that Section 314(d) prohibits this Court from

reviewing the Boards' institution decisions.  *See, e.g.*, *SightSound Techs., LLC v.*

*Apple Inc.*, No. 2015-1159, __ F.3d __, 2015 WL 8770164, at *3 (Fed. Cir. Dec.

15, 2015); *MCM Portfolio LLC v. Hewlett-Packard Co.*, No. __ F.3d __, 2015-

1091, 2015 WL 7755665, at *3 (Fed. Cir. Dec. 2, 2015); *Click-to-Call Techs., LP*

*v. Oracle Corp.*, 622 F. App'x 907, 908 (Fed. Cir. 2015).  As set forth below,

however, even if the Court were to consider Wi-Fi One's arguments, they are all

without merit.

     *First*, Wi-Fi One contends that the Court erred in interpreting Section 314(d)

to preclude judicial review of decisions whether to institute *inter partes* review.

Br. 20-24.  According to Wi-Fi One, Section 314(d) should be construed to

preclude only interlocutory appeals and not to preclude review of the institution

decision following a final written decision.  Br. 21-22.  That is plainly incorrect.

Section 314(d) is titled "No appeal" and states that "[t]he determination by the

---

[11] The Supreme Court recently granted a writ of certiorari to consider whether the
Board's decision to institute an *inter partes* review is subject to judicial review in
cases where the patent holder contends that the Board exceeded its statutory
authority.  *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446 (U.S. Jan. 15, 2016).

Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d). This language unambiguously precludes all review of the Board's decision whether to institute an *inter partes* review. That plain meaning is further confirmed by reading Section 314(d) in the context of the related provisions of the America Invents Act directed to *inter partes* reviews, which separately limit appeals to final written decisions. As this Court has explained:

> A declaration that the decision to institute is 'final' cannot reasonably be interpreted as postponing review until after issuance of a final decision on patentability. Moreover, given that § 319 and § 141(c) already limit appeals to appeals from final decisions, § 314(d) would have been unnecessary to preclude non-final review of institution decisions. Because § 314(d) is unnecessary to limit interlocutory appeals, it must be read to bar review of all institution decisions, even after the Board issues a final decision.

*In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1273 (Fed. Cir. 2015).[12]

---

[12] For these same reasons, Wi-Fi One's reliance on cases interpreting the Civil Service Retirement Act is misplaced. *See* Br. 22-23; *cf. Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768 (1985); *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009). The Supreme Court in *Lindahl* properly focused its analysis on the specific statutory provision at issue (which the Court held "quite naturally can be read as precluding review only of OPM's factual determinations") as well as the "overall statutory structure" and legislative history (which the Court held "quite clearly" indicated that Congress intended there to be some judicial review of decisions made pursuant to the Civil Service Retirement Act). *Lindahl*, 470 U.S. at 779, 789; *see also Reilly*, 571 F.3d at 1377 (discussing *Lindahl*). Those narrowly circumscribed decisions are irrelevant to this Court's correct interpretation of Section 314(d) and Section 315(b) of the America Invents Act.

**Second**, Wi-Fi One contends that, notwithstanding the clear language of Section 314(d), this Court has jurisdiction to review Section 315(b) determinations because Section 315(b) is a "congressional directive." Br. 24-27. According to Wi-Fi One, the Board's determination that a petition was timely filed is equivalent to the Board's determination that a patent qualifies for "covered business method review," which this Court held to be reviewable on appeal. Br. 19-20; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1319-21 (Fed. Cir. 2015). Once again, Wi-Fi One raises an argument that this Court has considered and properly rejected. As the Court explained in *Achates*, whether a patent qualifies as a "covered business method" is the "defining characteristic" of the Board's "authority to invalidate" a patent in a covered business method review. *Achates*, 803 F.3d at 657-58 (quoting *Versata*, 793 F.3d at 1320-21). By contrast, Section 315(b) has no impact on the Board's ultimate authority to invalidate a patent claim, it merely bars particular petitioners from challenging the claim. *Id.* In other words, the Board **always** has the power to invalidate a claim challenged in a time-barred petition via a timely petition from another petitioner, even if that petition raised the exact same arguments as the time-barred petition. *Id.*

Wi-Fi One contends that the Court erred in *Achates* by distinguishing the "jurisdictional" issue in *Versata* from the "non-jurisdictional" nature of Section 315(b) determinations. Br. 24-27. In particular, Wi-Fi One argues that *City of*

*Arlington v. FCC*, 133 S. Ct. 1863 (2013), prohibits this Court from making such distinctions. *Id.* But, while *City of Arlington* notes that it is inappropriate to characterize statutory provisions as "jurisdictional" or "non-jurisdictional" when determining if an agency's statutory interpretations are entitled to *Chevron* deference, 133 S. Ct. at 1868, the Supreme Court has also explained that a time-bar governing an agency's authority to act is either "non-jurisdictional" (and thus may be waived) or "jurisdictional" (and thus is non-waivable). *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824-25 (2013). The Court held, moreover, that there is a presumption that agency time-bars are non-jurisdictional and that such a presumption may be overcome only by a "clear statement" to the contrary. *Id.* Section 315 lacks any such "clear statement," and thus it is plainly not a limit on the Board's ultimate authority to invalidate particular patent claims—which the Board could indisputably do upon consideration of a non-time-barred petition.

**Finally**, Wi-Fi One contends that *Achates* does not govern the present case because the Board did not make an explicit determination regarding Section 315(b) in its Decision on Institution. Br. 21 n. 5. That is not correct, as *Achates* makes clear. Any challenge under Section 315(b) is a claim that the Board erred in deciding to institute an *inter partes* review. Indeed, as Wi-Fi One concedes elsewhere, the Board's Section 315(b) determination "goes to the heart of whether the IPR petition was time-barred when it was filed." Br. 33. And as this Court

explained, regardless of when (or how many times) the Board considers whether a petition is time-barred, that determination is always "part of the decision to institute" and thus may not be challenged on appeal. *Achates*, 803 F.3d at 658.

### B. Although Not Reviewable, The Board Correctly Determined That Broadcom's Petition Was Not Time-Barred.

#### 1. The Board properly applied Section 315(b) to determine that Broadcom's petition was timely filed.

The Board considered and rejected Wi-Fi One's contention that Broadcom's petition was time-barred because the Texas Defendants were real parties in interest or in privity with Broadcom. A7-8; A326-28; *see also* A109-14; A131-35. Wi-Fi One contends the Board "applied the wrong legal standard in making its § 315(b) determination." Br. 28-32. In particular, Wi-Fi One argues that the Board erred by focusing exclusively on whether Broadcom controlled the Texas Defendants in the Texas litigation, and by not considering whether the Texas Defendants controlled Broadcom in the *inter partes* review. *Id.* Wi-Fi One's theory is starkly contradicted by the record.

Wi-Fi One alleges error based solely on the fact that the Board explained—correctly—that Wi-Fi One had failed to show that Broadcom controlled, or could have controlled, the Texas litigation. Br. 31. In the passages cited by Wi-Fi One, *id.*, the Board was responding directly to Wi-Fi One's (baseless) contention that Broadcom had the ability to exercise control over the Texas Defendants. *See* A68

("Here, evidence will prove that ***Broadcom has had the opportunity to control*** and maintains a substantive legal relationship with the D-Link Defendants sufficient to bind Broadcom to the District Court's judgment."); *see also* A110-18.[13]  After the Board issued its Final Written Decision, Wi-Fi One reversed its position and asserted a new theory that the Texas Defendants were controlling Broadcom. A313-15.  Far from Wi-Fi One's claim that "[t]he Board made it abundantly clear that it viewed the District Court Defendants' right to control this IPR to be of no importance whatsoever," Br. 31, the Board explained that whether a non-party (such as the Texas Defendants) could exercise control over a party (such as Broadcom) is a relevant factor in its privity analysis.  A327-28.  The Board simply rejected Wi-Fi One's new theory of privity because it was as baseless as Wi-Fi One's original theory.  *Id.*

### 2.    The Texas Defendants are not real parties in interest or in privity with Broadcom.

Even setting aside Wi-Fi One's shifting sands approach below, the record amply demonstrates that the Texas Defendants are not real parties in interest or in privity with Broadcom.  Wi-Fi One's additional arguments—that the Board abused

---

[13] Notably, while Wi-Fi One contended that Broadcom engaged in litigation and *inter partes* reviews "on behalf of its customers pursuant to its indemnity obligations," it made clear that it was ***not*** contending that any indemnity agreement subjected Broadcom to the control of its customers, but rather that Broadcom was independently seeking "to protect [its own] interests," A63, and following its own "corporate policy on litigation on behalf of its customers."  A68.

its discretion in denying Wi-Fi One's request for additional discovery (Br. 32-35), that the Board did not adequately set forth the reasons for its decision (Br. 35-36), and that the Board's determination is not supported by substantial evidence (Br. 37-38)—are contradicted by the record and plainly fail to support Wi-Fi One's claim that the Board erred in instituting an *inter partes* review.

Wi-Fi One's principal argument is that the Board abused its discretion by not compelling the production of certain indemnity agreements between Broadcom and two Texas Defendants.  *See* Br. 32-35.[14]  The Board, however, properly found that Wi-Fi One's motion was based on nothing more than "conjecture" and "mere speculation," and therefore failed to meet its burden of proving that additional discovery would be "in the interests of justice."  A115-19; *see also* 35 U.S.C. § 316(a)(5) ("[D]iscovery shall be limited to … what is otherwise necessary in the interest of justice."); 37 C.F.R. § 42.51(b)(2)(i) ("The moving party must show that such additional discovery is in the interests of justice.").  The existence of indemnity provisions is not, as Wi-Fi One suggests, sufficient to establish that the Texas Defendants are real parties in interest or in privity with Broadcom.  *See Apple Inc. v. Achates Reference Publ'g, Inc.,* IPR2013-00080, 2013 WL 6514049, at *3 (PTAB Apr. 3, 2013) ("*Apple*") ("Indemnification is not one of the

---

[14] Although Wi-Fi One bases its arguments on these indemnity agreements, it sought to propound far broader discovery requests upon Broadcom below.  *See* A1673-77.

'substantive legal relationships' cited in *Taylor* [*v. Sturgell*, 553 U.S. 880 (2008)] and is significantly different from those relationships, which involve successive interests in property.").[15]  Rather, the Board properly evaluates whether a non-party is a real party in interest or privy under "conventional principles of estoppel and preclusion," *id.* at *2, and conducts that evaluation "in a manner consistent with the flexible and equitable considerations established under federal caselaw." 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012); *see also id.* at 48,759-48,760 (relevant factors for determining whether a non-party is a real party in interest or privy include whether the non-party funded or directed the proceedings or "exercised or could have exercised control over a party's participation in a proceeding").  The Board correctly applied these standards in rejecting Wi-Fi One's motion for additional discovery.  A108-15.

In addition to its assertions regarding Broadcom's purported indemnity obligations, Wi-Fi One based its request for additional discovery on three exhibits. These documents further demonstrate that Wi-Fi One's privity allegations are groundless and that Wi-Fi One failed to meet its burden of proving that additional discovery would be "in the interests of justice."  A119.  First, Wi-Fi One relied on

---

[15] In *Taylor v. Sturgell*, the Supreme Court held that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment…. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."  553 U.S. 880, 894 (2008).

a general risk statement in Broadcom's SEC filings discussing the risks for

Broadcom of patent litigation brought against its customers.  A63; A1879.  Second,

Wi-Fi One relied on an email chain between Acer and Wi-Fi One that refers to

"technical discussion with the chipset suppliers" and "comments from Acer's

vendors, including Intel, Broadcom and Atheros."  A64; A1913-15.  Providing

technical information to a customer does not remotely establish "control" or

"privity."  █████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████.  A64; A1923-59.  ████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████.  As the Board correctly found, none of this shows privity

between Broadcom and any other entity.  A113-19.[16]

_____

[16] Wi-Fi One contends that the Board's reasoning was "circular" because it denied
Wi-Fi One's motion based on its failure to present adequate supporting evidence.
Br. 33.  But as noted above, the Board properly recognized that Wi-Fi One's
"conjecture" and "mere speculation" were insufficient to meet its burden of
demonstrating that additional discovery would be "in the interest of justice."
A108-09; A115-16.

The Board also considered a sworn declaration from Broadcom that directly refutes Wi-Fi One's claims that Broadcom exerted control over the Texas litigation.[17]  That declaration establishes that: ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████. *See* A1447-48.[18]

_____

[17] *See* A119 (denying motion "[a]fter weighing … the redacted information and arguments presented by [Wi-Fi One] and Broadcom that remain under seal").  The Board did not detail Broadcom's confidential evidence in its decision because it determined that Wi-Fi One's motion should be denied with or without that evidence.  *See* A108 n.3 ("After review of the un-redacted materials, the Board determines that they do not alter the outcome.").

[18] Wi-Fi One asserts that Broadcom's declaration was "carefully worded to focus narrowly and exclusively on Broadcom's ties to the District Court Litigation, and to avoid any mention of the District Court Defendants' role in directing or controlling this IPR."  Br. 37.  As discussed above, Broadcom submitted this declaration in response to Wi-Fi One's claim that Broadcom could control the Texas Defendants; it was not until Wi-Fi One's petition for rehearing of the Final Written Decision that Wi-Fi One reversed course and asserted that the Texas Defendants controlled Broadcom.  Broadcom had no opportunity to respond to Wi-Fi One's new, equally meritless accusations, as the Board properly found that Wi-Fi One's second theory was as groundless as its first.  A326-28.

The Board carefully considered all of Wi-Fi One's allegations and rightly concluded that they do not justify additional discovery, *see* A113-19,[19] and properly held that Broadcom's petition for *inter partes* review was not time-barred under Section 315(b).  A7-8; A326-30.[20]  Because the record amply supports the conclusion that the Texas Defendants are not real parties in interest or in privity with Broadcom, Wi-Fi One has shown no error with the Board's determination that Broadcom's petition for *inter partes* review was timely filed.

### C.    Wi-Fi One Has Identified No Basis For This Court To Invoke The Extraordinary Remedy Of Mandamus.

Wi-Fi One requests, in the alternative, that this Court treat its appeal as a petition for mandamus relief.  Br. 27-28, 38-41.  "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *see also In re Regents of Univ. of Cal.*, 101

---

[19] Although Wi-Fi One contends that the Board's denial of its requested discovery violated Section 556 of the Administrative Procedure Act, Br. 34, Wi-Fi One concedes that the Board has discretion to manage discovery, Br. 33, and further concedes that Section 556 "does not command that agencies admit all relevant evidence."  Br. 35 (quoting *Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1319, 1331 (3d Cir. 1987)).  As set forth above, the Board properly exercised its discretion to deny Wi-Fi One's discovery requests.

[20] Wi-Fi One contends that the Board "never expressly decided the § 315(b) issue" because its Final Written Decision incorporated by reference its earlier analysis set forth in its denial of Wi-Fi One's request for additional discovery.  Br. 36.  The Board's multiple decisions on this point could not be more clear—in sections titled "35 U.S.C. § 315(b)" the Board held that there was no evidence that the Texas Defendants were real parties in interest or in privity with Broadcom and therefore Broadcom's petition was not time-barred.  *See* A7-8; A326-30.

F.3d 1386, 1387 (Fed. Cir. 1996); *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). A party seeking a writ bears the burden of proving that its right to issuance of the writ is "clear and indisputable." *Allied Chem.*, 449 U.S. at 35.

To show a "clear and indisputable" right, the petitioner must prove that the lower court's analysis amounted to a "clear abuse of discretion." *In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus requires a "patently erroneous result"). Indeed, even if one demonstrates a "clear and indisputable" right to the writ, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004).

As set forth above, the Board correctly determined that Broadcom's petition was not time-barred under Section 315(b). Wi-Fi One has no "clear and indisputable" right to relief, and therefore its alternative request for a writ of mandamus should be denied.

## CONCLUSION

The Board's decision should be affirmed.

Respectfully submitted,

/s/ Dominic E. Massa
DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

January 25, 2016

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of January, 2016 I filed the foregoing Brief for Appellee Broadcom Corporation with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(b).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 11,461 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

January 25, 2016